UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-165(32)(JRT/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING** |
| BURNEY ABDULAH PEOPLES, | |
| Defendant. | |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Deidre Y. Aanstad, Assistant United States Attorney, hereby submits its position with respect to sentencing of Defendant Burney Abdulah Peoples. For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 84 months of imprisonment followed by a four-year term of supervised release.

## INTRODUCTION

On May 20, 2015, a 12-count Indictment was returned by a grand jury sitting in the District of Minnesota charging the defendant and 40 other individuals with conspiracy to distribute heroin, methamphetamine, oxycodone, hydromorphone, hydrocodone, and methadone, to the communities in and surrounding the Red Lake and White Earth Indian Reservations in the District of Minnesota and Native American communities elsewhere, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. (District Court Docket ("DCD") 1; Presentence Report ("PSR") at ¶ 1.) The defendant was

named in Count 1 of the Indictment. The defendant was arrested on June 26, 2015, and released on bond on June 29, 2015. (DCD 368.)

On June 27, 2018, the defendant pled guilty to the lesser-included offense of Count 1 of the Indictment, that is, conspiracy to distribute heroin, methamphetamine, oxycodone, hydromorphone, hydrocodone, and methadone, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846. (PSR ¶ 16.)

I.     **Offense Conduct**

During the spring and summer of 2014, law enforcement began investigating the drug trafficking activities of Omar Sharif Beasley and his drug trafficking organization ("Beasley DTO"). According to information provided by community members as well as facts learned during the investigation, law enforcement was aware that Beasley was distributing large quantities of heroin in and around the Red Lake Indian Reservation. Further, Beasley was using local community members to assist him in the distribution of controlled substances. A break in the investigation came on October 3, 2014, when law enforcement from the Red Lake Police Department executed a warrant at a residence on the Red Lake Indian Reservation. Inside the residence, officers located several of the defendant's co-conspirators and approximately 1300 grams of heroin. All the individuals located inside the home were arrested on tribal or state charges.

As the investigation continued, law enforcement learned that the conspiracy was operating not only on the Red Lake Indian Reservation, but also on the White Earth Indian Reservation and other Native American communities in North Dakota. A wire investigation was commenced in early March 2015. Law enforcement intercepted 56

telephone calls between Omar Beasley and the defendant in March 2014. (PSR ¶ 56.) The defendant told Omar Beasley in intercepted calls that he was "waiting on everybody to come through" with their money. (*Id.*) Further intercepted phone calls between Omar Beasley and other co-conspirators indicated that Omar Beasley told others to ask the defendant about the location of a cutting agent. (*Id.*) In addition to intercepted telephone calls, law enforcement conducted surveillance in Detroit Lakes, Minnesota, on March 8, 2015, and observed the defendant in the company of several charged co-conspirators, including Beasley.

Based on the intercepted telephone calls and surveillance, law enforcement identified the defendant as a distributor whom was involved in the Beasley DTO.

The defendant was involved with the DTO from approximately January 2015 and continuing through approximately April 2015. More specifically, the defendant traveled to the District of Minnesota from Michigan to work with Omar Beasley. Initially, the travel was for music. However, the defendant ultimately assisted Beasley in distributing and overseeing the distribution of heroin in the communities surrounding the Red Lake and White Earth Indian Reservations. The defendant collected money from local distributors for Omar Beasley. As part of the conspiracy, the defendant distributed and oversaw the distribution of at least 400 but less than 700 grams of heroin on and surrounding the Red Lake and White Earth Indian Reservations.

**II.     Prior Criminal History and Post-Charge Conduct**

As outlined in the Presentence Report prepared in this matter, the defendant has a prior criminal history that includes felony convictions for Delivery of a Controlled Substance and Third Degree Fleeing a Police Officer in a Motor Vehicle (two separate convictions).  (PSR ¶¶ 88, 89, and 91.)  The defendant also has convictions for several misdemeanor driving-related offenses.  As a result of the defendant's record, the defendant has a Criminal History Category of IV.

As noted above, the defendant was initially placed on conditional release on June 29, 2015.  After multiple violations of his conditional release, an arrest warrant was issued for the defendant on January 8, 2016, after the defendant absconded from pretrial supervision.  (DCD 1157.)  The defendant was a fugitive for approximately 18 months. (PSR ¶ 61.)  The defendant was arrested on July 5, 2017, in Michigan.  (PSR p. F.1.)  Since his return to the District of Minnesota in late July 2017, the defendant has been detained at the Sherburne County Jail.

## SENTENCING GUIDELINES CALCULATION

The district court should begin sentencing proceedings by correctly calculating the applicable Guidelines range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  In this matter, the defendant pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Heroin and other controlled substances. Based on the statutory provisions contained in the defendant's plea agreement, a 5-year mandatory minimum sentence is applicable.  In addition to the mandatory minimum sentence, the Sentencing Guidelines are applicable. The PSR correctly determined that the adjusted offense level for the defendant conspiring

to distribute at least 400 but less than 700 grams of heroin is 28.[1]  PSR ¶ 74.  The PSR correctly concludes that the defendant is entitled to a 3-level adjustment for acceptance of responsibility.  PSR ¶¶ 76-77.  Finally, the PSR correctly concluded that the defendant's criminal history category is IV.  PSR ¶ 97.

Based on the Probation Office's guidelines calculations, the PSR concluded that the defendant's Guidelines range for Conspiracy to Distribute and Possession with Intent to Distribute Heroin and other controlled substances is 84 to 105 months of imprisonment.  PSR ¶ 124.   For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 84 months of imprisonment.

## SECTION 3553(a) SENTENCING FACTORS

In determining a sentence sufficient, but not greater than necessary, to accomplish the federal sentencing goals outlined in 18 U.S.C. § 3553, a Court must examine multiple factors including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the

---

[1] In the preliminary Presentence Report, a 2-level enhancement was applied because the defendant was deemed to be a manager or supervisor in the conspiracy.  See Preliminary PSR ¶ 72.  The government noted no objections to the preliminary Presentence Report.  The 2-level enhancement was removed from the final Presentence Report.  Based upon a further review of the facts in the case, the government does not move for a 2-level enhancement for the defendant's role in the offense.

most effective manner; and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). In this case, considering all of the sentencing factors, the government respectfully submits that a sentence of 84 months' imprisonment is appropriate for the defendant. Such a sentence would be sufficient, but not greater than necessary, to accomplish the federal sentencing goals in this case.

**I.      Nature and Circumstances of the Offense**

Here, the defendant agreed that he voluntarily distributed and oversaw the distribution of between 400 and 700 grams of heroin for the Beasley DTO. To put the amount in perspective, heroin is typically sold for $75-$100 a gram in northern Minnesota. At times, heroin is sold for an even greater amount. Thus, the defendant distributed $30,000-$70,000 in heroin for the DTO in a little more than 4 months.

Neither the District of Minnesota nor the area surrounding the Red Lake and White Earth Indian Reservations are the defendant's home. Rather, the defendant travelled to Minnesota and quickly diverted from the music business and contributed to the ongoing heroin crisis in Minnesota and North Dakota. In doing so, the defendant contributed to a significant epidemic of substance abuse, specifically heroin and opioid abuse in Indian Country.

**II.     History and Characteristics of the Defendant**

By the defendant's own report, the defendant is addicted to several controlled substances, including heroin. The defendant did not admit he had a problem until his current incarceration. In conjunction with his substance abuse issues, the defendant has a significant history with the criminal justice system, including convictions for delivering

controlled substances. When faced with another significant drug charge, the defendant did not face the charges. Rather, several months after release, the defendant absconded from release and remained a fugitive for almost 18 months. Finally, as the defendant has remained in custody pending sentencing, the defendant made a threatening move towards a correctional officer on July 25, 2018. (PSR ¶ 102.) Examining all of these circumstances, a sentence within the calculated Guidelines range is warranted.

### III.    A Fair and Just Sentence

In evaluating what is a sufficient, but not greater than necessary, sentence, the Court must examine several societal factors in addition to the specific factors surrounding the offense and the defendant. Namely, the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Further, the Court must impose a sentence that affords adequate general and specific deterrence to criminal conduct. Here, a sentence of 84 months' imprisonment balances all these societal and personal factors.

Without thought or consideration of others, the defendant enabled and contributed to the epidemic of heroin and opioid substance abuse in Native American communities in the District of Minnesota. There is no secret about the chemical dependency struggles in Native American communities throughout the United States. There is no secret about the outside influences that bring drugs to the reservation and impact individual community members and the community as a whole. This defendant assisted in the distribution of heroin to a state and community that was foreign to him. To promote respect for the law and reflect the seriousness of the offense, the defendant must be punished for his actions.

Further, there must be an adequate sentence in hopes of deterring others that bring drugs and negative influences to infect an entire community, whether that community is their community or not.

After reviewing all the factors set forth in 18 U.S.C. § 3553(a), a sentence of 84 months' imprisonment is a sufficient, but not greater than necessary, sentence.

### SENTENCING ISSUES

In his position with respect to sentencing and supplementary *pro se* motion, the defendant objects to the Criminal History Category of IV that was assessed in the PSR. The defendant specifically challenges the assessment of two criminal history points assigned in paragraphs 92 and 95 of the PSR. The government will respond to each objection in turn.

In paragraph 92 of the PSR, the defendant is assessed one criminal history point pursuant to U.S.S.G. § 4A1.1(c). The conviction was for driving with a suspended license and possession of marijuana. If the conviction was solely for driving with a suspended license, the government would agree with the defendant that he should not receive one criminal history point. *See* U.S.S.G. § 4A1.2(c)(1) and 4A1.2, cmt. n. 4. However, the defendant entered a plea to possession of marijuana. Thus, pursuant to Sections 4A1.1(c), 4A1.2(a)(1), and 4A1.2, cmt. n. 4, the defendant was appropriately assessed one criminal history point. The government respectfully requests that the Court overrule the defendant's objection with respect to paragraph 92 of the PSR.

Next, in paragraph 95 of the PSR, the defendant is assessed one criminal history point pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(c)(2). The defendant claims that he

should not be assessed this criminal history point because this conviction is in error based on paperwork from the 39th Judicial District in the State of Michigan that reflects a not guilty plea. Based on the paperwork from the State of Michigan, the government is unable to meet its burden in light of the defendant's objection. Thus, the Court should sustain the defendant's objection. As a result, the defendant's criminal history points will total 8 rather than 9. Nonetheless, the defendant's criminal history category remains unchanged because the defendant would have a criminal history category of IV regardless of whether the defendant had 7, 8, or 9 criminal history points.

Finally, in his position pleading and by separate *pro se* motion, the defendant moves for a departure and variance based on an overstated criminal history category and the service of a significant amount of presentence imprisonment at the Sherburne County Jail. First, the government objects to a departure from the Sentencing Guidelines to account for a Criminal History Category of III rather than IV. The defendant received criminal history points based on his prior criminal activity and convictions. The defendant argues that he received two additional points despite the fact that he was convicted of two offenses on the same day because of the unfortunate circumstance of being arrested between the two offenses. *See* PSR ¶¶ 88 and 89. The defendant was arrested between the two offenses because the defendant committed two offenses at separate time. A departure is not warranted based on the defendant's prior record. Next, the defendant seeks a variance to 70-87 months of imprisonment based on the significant amount of time that the defendant has served at the Sherburne County Jail. The defendant will receive credit for the time that the defendant has served pre-sentence. However, the defendant should receive no further

credit because serving time at the Sherburne County Jail is a "hardship." The defendant was initially released pending trial. The defendant violated his conditions of release and absconded from pretrial supervision. The defendant remained a fugitive for 18 months. The government opposes any additional credit – other than that which he will receive – for remaining in custody since July 5, 2017.

## CONCLUSION

The government respectfully requests that the Court impose a sentence of 84 months' imprisonment followed by a term of four years of supervised release. This sentence is reasonable as guided by the factors outlined in 18 U.S.C. §§ 3553(a).

Dated: October 23, 2018

Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*s/Deidre Y. Aanstad*

BY: DEIDRE Y. AANSTAD
Assistant U.S. Attorney
Attorney ID No. 0331788